UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JEROMY A. DAVIS,<br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of<br>Social Security,<br>　　　　Defendant. | )<br>)<br>)<br>) CAUSE NO.: 1:21-CV-217-JPK<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], and Plaintiff's Opening Brief [DE 30]. Plaintiff Jeromy A. Davis requests that the July 8, 2020 decision of the Administrative Law Judge (ALJ) denying his claim for disability benefits be reversed and remanded for further proceedings. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On January 24, 2019, Plaintiff applied for disability benefits, alleging disability beginning September 19, 2018. Plaintiff's application was denied initially and on reconsideration. Plaintiff subsequently requested a hearing, which was held before an Administrative Law Judge (ALJ) on April 17, 2020. On July 8, 2020, the ALJ issued an unfavorable decision, making the following findings[1]:

> 1.　　The claimant meets the insured status requirements of the Social Security Act through June 30, 2024.
>
> 2.　　The claimant has not engaged in substantial gainful activity since September 19, 2018, the alleged onset date.

---

[1] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

3. The claimant has the following "severe" impairments: degenerative disc disease of the cervical spine; degenerative disc disease status post lumbar spine fusion; obesity; and attention deficit hyperactivity disorder (ADHD).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb stairs or ramps, balance, kneel, stoop, or crouch; can never crawl, or climb ladders, ropes, or scaffolds. Work with an option to sit or stand, changing positions no more frequently than every 15 minutes, while remaining on task. The claimant is able to remain on task in two-hour increments.

6. The claimant is unable to perform any past relevant work.

7. The claimant was [. . .] 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled", whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 23, 2017, through the date of this decision.

(AR 18-29)[2].

Plaintiff appealed, but the Appeals Council denied review. (AR 1-3). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for benefits, a claimant must establish that he suffers from a "disability," defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff argues that the ALJ "cherry-picked" from the record in finding his testimony inconsistent with the evidence, and made improper inferences about his treatment regime. Remand

4

is required because the Court is unable to trace the reasoning to several of the ALJ's conclusions, and the ALJ failed to follow SSR 16-3p in assessing Plaintiff's non-compliance with treatment.

I.      **Bias/Prejudice**

Although Plaintiff does not directly argue the ALJ was biased, he implies that the ALJ discredited his testimony by deliberately creating spurious contradictions with the evidence. *See* Pl. Br. 10, 16, 17 ("The ALJ left this information out in an attempt to discredit [Plaintiff]"). As the Commissioner observes, the ALJ is entitled to a presumption of honesty and integrity. Def. Br. 6 citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "It is only after a petitioner has demonstrated that the decisionmaker 'displayed deep-seated and unequivocal antagonism that would render fair judgment impossible' that the presumption is rebutted." *Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007) (citing *Liteky v. United States*, 510 U.S. 540, 556 (1994)). While Plaintiff presents evidence that the ALJ may have mischaracterized the record, and made certain unjustified inferences, that is different from saying the ALJ deliberately engineered a certain conclusion knowing that it was wrong. The Court has reviewed the record and finds no apparent evidence of bias, let alone "deep-seated and unequivocal antagonism," from the ALJ.

II.     **Medical Evidence**

Plaintiff argues that the ALJ cherry-picked from the record in discussing his testimony and the medical evidence. While not all of Plaintiff's points have merit, the ALJ made an error in this regard that requires remand.

Plaintiff first objects to the ALJ's analysis of his allegations of hand pain. At the hearing, Plaintiff testified mainly to issues with his right hand. (*See* AR 54-55). But most of the medical evidence pertained to his left hand, not his right. Discussing a record of an appointment with a nurse practitioner, the ALJ found: "While he testified to issues with his right hand at the hearing,

5

his complaints here involved three fingers on his left hand." (AR 21 citing AR 996). The ALJ also pointed to an examination from that appointment suggesting that Plaintiff's problems were primarily with his left hand. (*See* AR 21 citing AR 1001 (normal strength in the right upper extremity, but 4/5 strength in the left upper extremity)).

Plaintiff believes the ALJ mischaracterized that examination report, but that is debatable. The report stated in part: "Neurological: Positive for sensory change and weakness. Tingling: **primarily left hand**." (AR 1000 (emphasis in original)). Plaintiff believes that "'[p]rimarily left hand' indicates that the tingling is in the right hand also, but more so in the left hand." Pl. Br. 10. That is one interpretation – another is that the tingling occurred further up the left arm, but primarily in the hand. Plaintiff also argues that "the fact that the left hand is specified for the 'tingling' note but not the 'sensory change and weakness' note indicates that those issues are present with both hands." Pl. Br. 11. Again, that is a possible inference, but far from obvious. The nurse practitioner's narrative summary recounts Plaintiff's allegations of left arm pain, numbness, and weakness in considerable detail, but does not mention the right arm. (*See* AR 996). Another ALJ could have interpreted these notes differently, but the Court will not "substitute its judgment for that of the ALJ by re-weighing the evidence." *Beardsley*, 758 F.3d at 837.

At a doctor's visit on May 19, 2020, Plaintiff did state that he had been having "right arm pain for the past 6 months." (AR 980). Therefore, the ALJ erred when she stated that "the medical evidence of record received after the hearing noted . . . [that] his complaints were not of the right upper extremity." (AR 23 citing AR 980-1003). However, the ALJ's other findings about Plaintiff's right arm were adequately explained. For example, Plaintiff points to a note indicating weakness in right hand grip strength (AR 920), but the ALJ addressed that note, finding that "there

6

is no objective evidence to assess the severity of that weakness, or even other observations of right hand weakness in the remainder of the record." (AR 23).

Ultimately, the ALJ found that Plaintiff's allegations about his right hand were not fully substantiated by the medical evidence, because his right hand complaints to doctors were inconsistent, he did not receive treatment on it, and there was only one vague observation in the record of right hand grip weakness, despite multiple tests of his grip strength. (*See id.*). Although there was some evidence that could support Plaintiff's allegations, that does not preclude a finding that the record did not fully substantiate his claims. The ALJ followed SSR 16-3p, by comparing Plaintiff's allegations not just to the times he complained about his right arm, but to "all the evidence in [the] record," and explaining why she found Plaintiff's complaints to be inconsistent with the relatively sparse evidence. SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017). And the ALJ never said that Plaintiff's right hand pain did not exist, only that it was not as severe as alleged. (*See* AR 23). Again, someone else may have interpreted the record more favorably to Plaintiff, but the ALJ adequately explained her reasoning.

However, the ALJ made an unsupported inference that Plaintiff's complaints of back and neck pain were inconsistent with his work history. The ALJ found:

> The medical evidence of record received after the hearing from Parkview Physicians Group Neurosurgery includes treatment notes through May 2020, after the date of the hearing, and indicates his first visit was on February 21, 2020, which is a date after his reported cessation of work activity, February 7, 2020. His complaints at that first visit in February involved low and thoracic back pain as well as neck pain. Despite his testimony of not working after February 7, this February 21, 2020 treatment notes indicate his low back pain had been exacerbated by his new job "3 months ago when he got a new job in construction requiring him to lift and cut timber," and that his neck pain started with this job.

7

(AR 21 (internal citations omitted); *see also* AR 23 "[Plaintiff] reported upper extremity numbness and increased neck pain [in February 2020] . . . while also reporting working in construction, yet testifying to have ceased work activity as of February 7, 2020.").

The Court finds no meaningful inconsistency among these facts, and if there was a basis for a negative inference, it was not adequately explained. Plaintiff testified that he began work on December 4, 2019, at Manufactured Housing Enterprises (AR 48-49), which was consistent with the records obtained by the agency (AR 238). He testified that he quit on February 7, 2020, because of numbness in his left arm. (AR 49). On February 21, 2020, he visited the doctor, and described a "prolonged history of strenuous labor" which started to cause back pain several years ago. (AR 996). He "had been coping with his [] back pain until three months ago," when he started the construction job. (*Id.*). Although the dates do not precisely align, it is clear that Plaintiff complained of ongoing back pain[3] exacerbated by the construction job.

The ALJ seemed to assume that, because Plaintiff stopped the construction job on February 7, 2020, the pain should also have stopped – so if he was complaining about pain on February 21, he was either working (contrary to his testimony) or complaining about pain that no longer existed. But Plaintiff never said that the pain occurred *only* during the job, he said that it was triggered or exacerbated by it. (*See* AR 996 (describing ongoing symptoms and explaining that Plaintiff "had been coping with his lower and mid back pain until [the new job] . . . it was at this job that [Plaintiff] began experiencing neck pain as well."). The ALJ provided no basis for the assumption that everything would be resolved if he stopped working. There was significant medical evidence,

---

[3] This is also consistent with notes from his pain doctor, indicating that in November 2019 he had been off work "since September [2019] due to pain" (AR 930), and that on December 27, 2019, he was in pain but "concerned about being able to continue working" (AR 928).

including imaging results, indicating that Plaintiff's problem preceded the construction job[4] (*see, e.g.*, AR 659, 665-66, 774, 930-937) and continued in some form until at least May 2020 (*see* AR 980, 984), and function reports and testimony to the same effect (AR 49-66, 283-298). Remand is required, because the ALJ did not build a logical bridge to her conclusion that Plaintiff's allegations on this point were inconsistent with the evidence. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

## III. Daily Activities

Plaintiff argues the ALJ cherry-picked from the evidence in discussing his daily activities. The ALJ found that the "evidence regarding [Plaintiff's] daily activities demonstrates a greater level of physical and psychological function than the claimant alleges." (AR 25-26). The ALJ discussed reports that Plaintiff was able to prepare simple meals, clean, do laundry, dishes, and mow the lawn, among other tasks. (*Id.*) Plaintiff argues the ALJ "list[ed] chores that Plaintiff is capable of performing but fail[ed] to discuss the parameters in which [he] testified he was able to do them." Pl. Br. 15.

Earlier in the decision, the ALJ had summarized Plaintiff's testimony about his limitations on chores. (*See* AR 22). Although those facts were not repeated in the ALJ's subsequent analysis, "to require the ALJ to repeat such a discussion throughout [her] decision would be redundant." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). The ALJ never said that Plaintiff could do

---

[4] Plaintiff also argues that the ALJ should have credited his "strong work history." Failure to discuss work history, on its own, is generally not a basis for remand. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). Although Plaintiff did at least some work in each of the 20 years prior to his alleged onset date, it is not clear that the work was consistent or full-time (*see* AR 209), and the Court expresses no opinion as to whether this long-term work history supports a finding of disability. However, it appears that in 2019, Plaintiff, apparently suspecting that his pain would be exacerbated by work (*see* AR 980, 996), nonetheless attempted to work a construction job. The Court makes no findings on this issue, but on remand, if this is borne out in the record, the ALJ should consider whether it supports a finding of disability. *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("a claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms").

these activities unrestricted. The more reasonable reading is that Plaintiff's ability to do those chores in some form partially undermined his most severe complaints. For example, when asked who was "mainly responsible" for cooking, Plaintiff testified that his fiancée was, because he could not stand for long enough. (AR 58). However, he had reported that he prepared food "daily," for 20 minutes to a half hour, but not with a stove. (AR 285). Similarly, he reported that "[s]ome days I work around in garage best I can" on small car projects (AR 283), but he also testified that he was unable to change the oil in his car. (AR 68). Therefore, the Court does not remand on this issue. Nonetheless, it would have been helpful if the ALJ had more precisely explained how she considered the differing evidence of his daily activities. Moreover, on remand, the ALJ should also consider that many of the more severe complaints were made at the hearing, after the construction job that exacerbated his pain, which could partly explain why they were more severe than the limitations Plaintiff reported in 2019 (*see* AR 283-291).

### IV.     Surgery and Treatment Plan

Plaintiff argues that the ALJ erred in considering Plaintiff's treatment, and the Court agrees that this provides an additional basis for remand. The ALJ found that "there is no support in the medical evidence of record for [Plaintiff's] allegations of upper extremity or hand impairments, and there is no indication the lumbar surgery will not correct the claimant's impairments." (AR 22). As described above, there was indeed medical evidence in the record of upper extremity impairments, although the evidence specific to Plaintiff's right arm was sparse. There was also evidence that lumbar surgery would not have helped Plaintiff. In April 2019, his orthopedist wrote: "Unfortunately, I do not see any surgical options. Unfortunately with chronic preop radic, it is just not improved . . . Injection has not helped. Therapy has not helped . . . Unfortunately, this is going to have to be treated and managed medically." (AR 973). In March 2020, a nurse practitioner

10

"[b]riefly discussed with [Plaintiff] an L4/5 fusion. Will need to follow-up in office to discuss surgical options later." (AR 991). At the hearing, Plaintiff testified that his doctors were "talking about a fusion now," but still "figuring out what can be done." (AR 52). Back surgery is far from a guarantee, and the ALJ did not point to a conclusion from any doctor that further[5] surgery would be appropriate for Plaintiff, or that it could "correct" his impairments. *Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (ALJs must not "play[] doctor and reach[] [their] own independent medical conclusion"); *see also Palacios v. Saul*, No. 20-C-384, 2021 WL 960940, at *6-7 (E.D. Wis. Mar. 15, 2021) (ALJ played doctor by assuming that recent back surgeries were successful); *Dickerson v. Berryhill*, No. 16-CV-1246-JPG-CJP, 2017 WL 4682769, at *7 (S.D. Ill. Oct. 18, 2017) (ALJ improperly assumed that back and neck pain could be corrected with surgery); *Tarwacki v. Colvin*, No. 3:14-CV-1735-JVB-CAN, 2016 WL 1253548, at *5-6 (N.D. Ind. Mar. 30, 2016) (ALJ improperly relied on doctor's "conditional" projection to conclude that back surgery would be successful).

Finally, the ALJ appears to have made improper negative inferences about Plaintiff's failure to follow his doctors' treatment plans. The ALJ noted that on several instances, his doctors advised Plaintiff to quit smoking. (*See* AR 25 citing AR 922, 980-1003). For example, one doctor advised him to quit smoking because "[s]moking exacerbates chronic pain due to vessel constriction and hindering the blood flow to the affected site." (AR 922). "[T]he ALJ must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations."[6] *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see also* SSR 16-3p,

---

[5] Plaintiff had a lumbar discectomy in October 2018, and one month later he reported that this had relieved "80%" of his pain at that time. (*See* AR 457).

[6] Plaintiff's argument that "there is no finding by the ALJ that smoking cessation would actually restore [Plaintiff's] ability to work" (Pl. Br. 17) is beside the point. An ALJ can properly infer that a person's complaints of pain are inconsistent with their failure to take the recommended steps to relieve it, if the claimant "does not have a good reason" for failure to follow the treatment plan. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008).

11

2017 WL 5180304, at *10 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment . . . We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints."). Although this inference can be "extremely tenuous" because of the addictive nature of smoking (*Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000))[7], it is justifiable if the ALJ makes the required inquiry. *See*, *e.g.*, *Bonilla v. Astrue*, No. 3:09-CV-153 CAN, 2009 WL 5215333, at *9 (N.D. Ind. Dec. 23, 2009) (ALJ's inference about smoking cessation was proper where the claimant "stated her only reason for non-compliance was that she would rather smoke than gain weight"). In this case, though, the ALJ made the negative inference but never inquired why Plaintiff did not stop smoking or whether he had ever tried. On remand, if the same inference is to be made, the ALJ must explore the reasons for Plaintiff's non-compliance in the manner required by SSR 16-3p.

For the same reasons, the ALJ erred by apparently making a negative inference about Plaintiff's desire for narcotic pain relief. The ALJ described how in December 2019, Plaintiff's doctor had prescribed exclusively non-narcotic therapy. Plaintiff disagreed with that, and when the attending nurse declined to prescribe narcotics, Plaintiff asked to see a different pain doctor. (AR 25 citing AR 915). The ALJ correctly described the facts as relayed in the treatment notes, but again, did not ask Plaintiff about his desire for narcotic pain relief. If the implication was that Plaintiff sought the narcotic drugs for recreational purposes, the ALJ pointed to no evidence to support that, and any such inference was improper. *C.f. Randall R. L. v. Comm'r of Soc. Sec.*, No.

---

[7] Plaintiff analogizes this case to *Shramek*, but in that case, "no medical evidence directly linked [the claimant's] pain or swelling to her smoking. Therefore, the ALJ erred in relying on her failure to quit smoking as evidence of noncompliance." 226 F.3d at 813. In this case, a doctor clearly advised Plaintiff that smoking "exacerbates" his condition. (AR 922).

1:19-CV-141-MGG, 2021 WL 717529, at *9 (N.D. Ind. Feb. 23, 2021) (permitting an inference of improper narcotic use based on "ample support in the record," including failed drug screenings). If the ALJ penalized Plaintiff merely for his unwillingness to agree to his doctor's advice, again, she needed to inquire and "consider[]possible reasons" that Plaintiff may have sought stronger pain relief – such as his allegations of severe pain. SSR 16-3p, 2017 WL 5180304, at *10.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** the relief sought in Plaintiff's Opening Brief [DE 30] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 22nd day of September, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT